**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TONI PHILLIPS, *on behalf of herself and all others similarly situated*,

*Plaintiff*,

v.

7-ELEVEN, INC.,

*Defendant*.

Case No. ________________

CLASS ACTION COMPLAINT

Jury Trial Demanded

Plaintiff TONI PHILLIPS ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following class action complaint (the "Action") against Defendant 7-ELEVEN, INC. ("Defendant") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## INTRODUCTION

1. Defendant is the among the largest distributors of gasoline in the United States. With over thousands of 7-Eleven-branded fuel stations in the United States, Defendant sells millions of dollars of gasoline annually for consumer usage, including at over 800 locations within the state of New York.

2. Generally, Defendant sells different octanes of gasoline – which are usually sold in three denominations: premium (which has an octane of 91-94), midgrade (89-90), and regular (87). Each of these different octanes are called octane numbers, which measure a gasoline-based fuel's ability to resist engine knocking or premature auto-ignition under engine compression. Put differently, the fuel octane level is a rating that purportedly compare the fuel's resistance to being ignited by a car's engine.

3. Consumers generally understand, as Plaintiff Phillips and Class members do, that the ratings of gasoline by octane have a direct correlation with a car's engine performance. However, higher octane ratings do not mean this; despite Defendant's labeling as the various octane scores as "premium" or "midgrade" as compared to regular octane level. Plaintiff and Class members, with this understanding, pay a substantial amount more (generally $0.30 - $0.50

per gallon of gasoline sold) for premium or midgrade gasoline.[1] However, and contrary to the labeling of Defendant's gasoline, using a higher-octane gasoline for most cars provides no benefit whatsoever to a car's driving performance. Overtime, the price difference for what consumers pay based on these representations has become even more divorced from reality: consumers are paying more for the higher-octane gasoline products (the "Products") than they ever have. The spread for how much more expensive the Products are compared to regular gasoline continues to grow, even though consumers generally do not need to purchase those levels of gasoline. The United States Department of Energy reports as much:




[1] https://bradhallfuel.com/understanding-the-difference-between-premium-and-regular-gas/, (last accessed Nov. 12, 2026).

4. Indeed, testing on the different octane levels of gasoline even showed that there are no marketable differences between the three types unless the car being filled requires that level of gasoline. According to Jake Fisher of Consumer Reports, "'premium' is really the wrong word for higher-octane gasoline […] [p]utting premium fuel into a car that does not require it won't make it go faster or run better or last longer."[2] After conducting tests according to a stringent fuel-economy protocol, tested vehicles "achieved the same fuel economy when tested with regular and with premium fuel."[3] The only real requirement that certain cars should be using a higher-octane gasoline is under "extreme conditions, like very high heat or [during] heavy towing."[4]

5. According to Giorgio Rizzoni, director of the Center for Automotive Research at the Ohio State University, the only real benefits Rizzoni says premium gas has is if the engine is under car racing circumstances on a "closed circuit."[5] Consumers should not be racing their cars on open roads – but, unbeknownst to consumers, they have no idea that the benefits of the Products do not actually aide in the performance of their vehicles. Consumers merely follow what Defendant advertises – which is that the higher-octane fuels are better for their cars, when, unreality, they make little to no difference.

6. The misconceptions about premium fuel are well known by industry experts. According to Brad Hall Fuel, a gasoline and fueling expert for automobiles:

---

[2] Keith Barry, "*Premium Fuel is a Waste in Cars that Don't Need It, Consumer Reports Show*," CONSUMER REPORTS (ONLINE) (Sept. 11, 2026), at https://www.consumerreports.org/cars/fuel-economy-efficiency/why-you-might-not-actually-need-premium-gas-a6382185831/.

[3] *Id.*

[4] *Id.*

[5] *Id.*

> The truth is that top class (premium and midgrade) fuel online best bless engines which can be designed to take advantage of its better octane fuel. **For engines engineered for normal fuel lines, top class affords no full-size improvement. This false impression ends in overspending for corporations and people alike**.[6]

7. Consumers pay the price for this misconception perpetuated by Defendant and other gasoline retailers. According to Consumer Reports, using regular gas instead of premium gas can save consumers anywhere from $356-$712 on an annual basis.[7] These savings are even higher during periods where gasoline prices are higher than average – as they have been during 2026.

8. Against this backdrop, Plaintiff Phillips, on behalf of herself and all others similarly situated, brings this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's mislabeling of their own products for profit.

9. As a result of the foregoing, Plaintiff Phillips and Class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made about on gas pumps and in advertising – or would not have purchased the Products at all.

## JURISDICTION AND VENUE

10. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act of 2005 ("CAFA") because there are (a) more than 100 members of the proposed classes, (b) members (including Plaintiff Phillips) of the

---

[6] https://bradhallfuel.com/understanding-the-difference-between-premium-and-regular-gas/, (last accessed Nov. 12, 2026).

[7] Keith Barry, "*Premium Fuel is a Waste in Cars that Don't Need It, Consumer Reports Show*," CONSUMER REPORTS (ONLINE) (Sept. 11, 2026), at https://www.consumerreports.org/cars/fuel-economy-efficiency/why-you-might-not-actually-need-premium-gas-a6382185831/.

proposed classes have a different domicile or citizenship from the Defendant, and (c) the claims of the proposed class members exceed $5 million, exclusive of costs and fees. Specifically, there are thousands of members of the proposed classes; Plaintiff Phillips is domiciled in New York while Defendant is headquartered in Texas; and the measure of damages (a price premium paid on every package of the Products during the Class Period) as alleged well exceeds $5 million dollars.

11. *Personal Jurisdiction.* This Court has personal jurisdiction over Defendant because: (1) Defendant is registered to do business in New York, and (2) Defendant conducts significant business in New York such that they purposefully availed themselves of the privilege of doing business in New York.

12. *Venue.* Venue is proper in this Court because Defendant transacts business within this District, Defendant is domiciled in this District, and a substantial part of the events giving rise to Plaintiff's claims took place in this District – including Plaintiff Phillips' purchases.

## PARTIES

### PLAINTIFF

***Plaintiff Toni Phillips***

13. Plaintiff Phillips is domiciled in New York and resides in Patchogue, New York.

14. Plaintiff Phillips purchases the Products for her car, a Cadillac, which does not require the use of the Products for her specific model. According to Plaintiff Phillips, she bought the Products for her car because she relied on Defendant's representations, including that the Products provided benefits to her car – when, in reality, they do not. In fact, Plaintiff Phillips only purchases the Products solely because she thought Defendant's Products were better for her car than the octane levels offered by Defendant.

15. Plaintiff Phillips buys the Products – namely, premium gasoline – at her local 7-Eleven in Patchogue, New York on a regular basis. She has overpaid by hundreds of dollars annually to Defendant as a result.

16. Plaintiff Phillips relied on these misrepresentations – and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products. Plaintiff Phillips would buy the Products again if they were properly labeled.

## DEFENDANT

***Defendant 7-Eleven, Inc.***

17. Defendant 7-Eleven, Inc. maintains its principal place of business located in Irving Texas. In New York state, Defendant's appointed agent is Corporate Creations Network, Inc. of 600 Mamaroneck Avenue, Suite 400, Harrison New York 10528.

18. Defendant is an American convenience store chain which is a wholly owned subsidiary of Seven & I Holdings, a Japanese retail holding company.

19. Defendant markets, manufactures, distributes, sells, or otherwise is responsible for the placement of the Products at their stores at retail gas stations.

## FACTUAL ALLEGATIONS

### *The American Gasoline Business*

20. The use of gasoline due to the proclivity for American consumers to drive cars, has made the United States one of the most profitable countries in the world to sell gasoline to consumers. According to the United States Department of Energy, in 2025, the United States used approximately 136.97 billion dollars of gasoline to consumers, equating to over 575 gallons per driver on an annual basis. Indeed, because American consumers rely on their cars as much as they do, the demand for gasoline is inelastic.

21. So too is the desire of American consumers, like Plaintiff Phillips, to keep their cars running at their very best. Cars are one of the most expensive assets that most consumers utilize – regardless of whether that consumer has purchased their car or leased it. According to NerdWallet, the average cost of a car payment is $787 per month and the amount spent on gasoline on a monthly basis exceeds $201. At the high prices that consumers pay for cars, they simply cannot afford to make mistakes when supplying their cars with fuel.

22. Gasoline retailers know this. Defendant does too.

23. Thus, thousands of retailers sell gasoline across the United States.

24. There are over 122,620 retail gas stations sold in the United States, and 80% of gasoline retailers are part of convenience stores – similar to Defendant, which runs its own chain of franchised convenience stores of the same name (7-Eleven).[8]

25. Generally, every single gasoline station sells either leaded or unleaded gasoline directly to consumers. This Action concerns the sale of unleaded gasoline. Unleaded gasoline, at most gas stations are sold based on octane level.

26. The octane level of unleaded gasoline is a comparison of a that gas's resistance to a blend of two reference chemicals: *iso-octane* (which is rated up to 100 for high resistance) and *n-heptane* (which is rated at 0 for low resistance). Thus, a 90-octane gasoline is rated at 90% iso-octane with a mixture of 10% heptane.

27. Consumers are generally given no guidance at gas stations as to which gasoline to use, other than the reliance that takes place each time they fill up their cars at the pump. In essence, Plaintiff Phillips and Class members are entirely in the dark as to what these numbers

[8] https://www.convenience.org/stay-current/convenience-store-fast-facts-and-stats/industrystorecount, (last accessed, Nov. 12, 2026).

mean as they are highly scientific. Acting reasonably under these circumstances, Plaintiff Phillips and Class members rely on the representations made by gasoline retailers, including Defendant, when they fill their cars with gas – understanding that a higher octane and the label "premium" must mean that the gasoline they purchase is in fact better for their cars.

**DEFENDANT'S MISREPRESENTATIONS**

28. As stated, Defendant leads consumers to believe, as they did to Plaintiff Phillips and Class members, that higher octane Products are better for their vehicles – when the reality is that premium gasoline, under these circumstances, yields no benefit for a higher priced gasoline product.

29. Defendant easily could label their gasoline based purely off of the octane level without the misleading labels that separate the various octane levels into categories, as some gasoline stations do:




30. However, Defendant, at their gas station retail locations labels their gasoline Products appearing as follows with labels including "premium" and "mid-grade":




31. Despite the unassailable truth that the Products do not necessarily comport with their labels, Defendant makes an extraordinary amount of profit from the premium price associated with their labeling system.

32. Each of the fuel pumps which provide the Products, no matter the various levels of octane, are not only substantially similar, but are identical and appear exactly the same. Critically, there are no disclaimers that discuss or inform consumers about how the Products essentially are no different than regular gasoline in almost every context.

33. And yet, according to Yahoo!, a 2016 study by AAA found that premium gas offered zero benefits to cars which can consume regular gas.[9] As that study concluded: consumers have come to associate premium gasoline with greater performance, even though that added power actually comes from engine design choices […] [t]oday, many motorists believe that

[9] https://finance.yahoo.com/energy/articles/why-premium-gas-expensive-more-140027883.html?guccounter=1, (last accessed Nov. 12, 2026).

premium grade gasoline will give engines designed to run on regular a variety of benefits, including more power, lower tailpipe emissions, and better fuel economy."[10]

34. The study states: "[t]he automobile is often a person's second most expensive life purchase […] based upon AAA's testing motorists are not treating their vehicle in any meaningful way by using premium when the vehicle is designed on run on regular fuel. AAA calculated that U.S. drivers waste $2.1 billion annually" as part of this misconception.[11]

## CONSUMER HARM

35. Due to the significant number of sales of the Products, there are likely millions of consumers who have purchased and are continuing to purchase the Products distributed, marketed, produced, and sold by the Defendant.

36. Gasoline retailers, especially sophisticated, billion-dollar corporations like Defendant, hold a position of public trust. Consumers, like Plaintiffs and Class members, reasonably believe that these Products have some benefit for their vehicles beyond what regular gasoline would offer – but, critically, they do not.

37. In light of all of this, had Plaintiff Phillips and Class members known that the Products were devoid of any substantial benefit beyond what regular gasoline offers, they either would have been unwilling to purchase the Products or would have paid significantly less for the Products. Nearly 35 years ago, the Los Angeles Times reported that gasoline companies make over $3 billion annually from the misconceptions that they create with respect to gasoline octane

---

[10] https://newsroom.aaa.com/wp-content/uploads/2016/09/Premium-Fuel-REPORT-FINAL3.pdf, at 2.

[11] *Id.*, at 20.

representations as articulated in this Action.[12] Assuredly, the amount of damages to consumers has only increased as gas prices have risen dramatically over the past three and a half decades.

38. Indeed, according to CNN, "gas stations have turbocharged price hikes for premium gas over the past couple decades, creating a profit engine for station owners."[13] As CNN reported, the Products were sold at about 20 cents more per gallon than regular gasoline; the gap widened to 40 cents in 2015, 60 cents in 2018, and 80 cents in 2022 – crossing the $1 threshold in 2026.[14]

39. A major driver of this is false perception. CNN continues, "drivers buy it, even when their cars don't need it."[15] According to Andrew Lipow, president of Lipow Oil Associates, "[t]he consumer likes to put premium gas in their car because they think it gives them better performance."[16] Partly to blame, as reported by CNN, is "[a] century of marketing" which led to that misconception.[17]

40. Defendant knew that Plaintiff and Class members would pay more and select "premium" options in order to benefit their cars. The Products' marketing is entirely and materially deceptive, false and misleading given Defendant's misrepresentations and omissions as stated above.

---

[12] https://www.latimes.com/archives/la-xpm-1992-08-13-mn-5733-story.html, (last accessed Nov. 12, 2026).

[13] https://finance.yahoo.com/energy/articles/why-premium-gas-expensive-more-140027883.html?guccounter=1, (last accessed, Nov. 12, 2026).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

41. As such, Plaintiff and Class members were harmed in the form of the monies they paid for the Products which they would not have otherwise paid had they known the truth.

## CLASS ACTION ALLEGATIONS

42. Plaintiff Phillips brings this Action individually and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23, seeking certification of the proposed classes (collectively, the "Class"):

> **Nationwide Class**: All persons within the United States who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

43. Additionally, Plaintiff Phillips brings this Action on behalf of the following subclass:

> **New York State Sub-Class**: All persons within the State of New York who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

44. Excluded from the proposed Class are Defendant and any such entities in which the Defendant has a controlling interest, the Defendant's agents, employees and legal representatives, any judge or judicial officer to whom this matter is assigned and any member of such judge or judicial officers' staff and immediately family, as well as all resellers of the Products.

45. ***Numerosity***. The members of the Class are so numerous that joinder would be inefficient and impracticable. Based upon Defendant's annual sales statistics, there are at least tens of thousands of Class members across the country.

46. ***Commonality***. There are common questions of law and fact relevant to the Class, and these questions predominate over any questions affecting individual Class members. These common questions of law and fact include, without limitation:

i. Whether Defendant violated state and common law statutes and doctrines;

ii. Whether Defendant engaged in the conduct as alleged;

iii. Whether Defendant was unjustly enriched;

iv. Whether Plaintiff Phillips was harmed;

v. The measure of damages to Plaintiff Phillips and Class members; and,

vi. Whether Plaintiff Phillips is entitled to declaratory and injunctive relief.

47. ***Typicality***. Plaintiff's claims are typical of those of other Class members because Plaintiff, like every other Class member, was harmed by way of the conduct as alleged herein. Plaintiff, like all other Class members, was injured by Defendant's uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, such that there are no defenses unique to Plaintiff. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

48. ***Adequacy of Representation***. Plaintiff will fairly and adequately represent and protect the interests of the Class members in that she has no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiff suffered are typical of other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in consumer protection class action litigation, and Plaintiff intends to prosecute her action vigorously.

49. ***Superiority of Class Action***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class common issues to be

adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

50. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

51. Adequate notice can be given to Class members directly using information maintained in the parties' records.

52. ***Predominance***. The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

53. This proposed class action does not present any unique management difficulties.

## FIRST and SECOND CAUSE OF ACTION

## VIOLATIONS OF CONSUMER PROTECTION LAWS

## NEW YORK'S CONSUMER PROTECTION LAW
## N.Y. GEN. BUS. LAW §§ 349 and 350 ("GBL §§ 349 and 350")
(ON BEHALF OF THE NEW YORK SUBCLASS)

54. Plaintiff repeats the allegations in Paragraphs 1-52 as if fully set forth with the same force herein.

55. For purposes of GBL §§ 349 and 350, Defendant is considered a business and Plaintiff (as well as Class members) are considered consumers.

56. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service [. . .]". GBL § 350 forbids the sale of products and services using false advertising. The analysis of both of these causes of action are generally conducted together.

57. Defendant committed deceptive acts or practices by employing false, misleading, and deceptive representations and/or omissions about the efficacy of the Products.

58. Information as to the content in each of their Products was in the exclusive control of Defendant. Plaintiff Phillips could not possibly have known that the Products were devoid of any material benefit for their vehicles. To compound matters, Defendant made no warning about the material misrepresentations concerning their Products.

59. Because Plaintiff Phillips bought this Product numerous times, Plaintiff has standing to pursue this claim because she has suffered an economic injury due to lost money or property as a result of Defendant's acts or practices. When Plaintiff purchased the Products, she relied on false, misleading and deceptive representations that the Products were superior to regular gasoline – when there was no appreciable difference for her vehicle. Plaintiff spent money in the

transaction that she otherwise would not have spent had she known the truth about Defendant's Products.

60. Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations. Defendant knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that they were superior to regular gasoline products.

61. As a result of its deceptive acts and practices, Defendant sold millions of gallons of the Products to unsuspecting consumers nationwide, as well as to thousands of unsuspecting consumers in New York – including to Plaintiff Phillips.

62. As a direct and proximate result of Defendant's false, misleading and deceptive representations and/or omissions, Plaintiff Phillips and Class members were injured in that they: (1) overpaid for the Products that were not what Defendant represented, and (2) were deprived of the benefit of their bargain because the Products they purchased had less value than if Defendant had adequately disclosed that the Products had no appreciable benefits for Plaintiff's vehicle.

63. On behalf of herself and Class members, Plaintiff Phillips seeks to enjoin Defendant's unlawful acts and practices.

64. Additionally, on behalf of herself and Class members, Plaintiff Phillips also seeks to recover her actual damages or $50.00 in statutory penalties, whichever is greater, three times her actual damages, for each purchase of Defendant's Products as well as reasonable attorneys' fees under GBL § 349. Further, on behalf of herself and Class members, Plaintiff Phillips also seeks to recover her actual damages or $500.00 in statutory penalties, whichever is greater, three times her actual damages, for each purchase of Defendant's Products as well as reasonable attorneys' fees under GBL § 350.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

(ON BEHALF OF THE NATIONWIDE CLASS AND NEW YORK SUB-CLASS)

65. Plaintiff Phillips realleges the allegations of Paragraphs 1-52 as if fully set forth herein.

66. Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

67. Defendant received benefits from Plaintiff and Class members in the form of the Plaintiff and Class members' compensation Plaintiff provided for the Products.

68. These purchases provided the Defendant with economic, intangible, and other benefits, including money.

69. Had Plaintiff and Class members known of Defendant's misconduct, they would not have paid for the Products.

70. Defendant unjustly retained these benefits at the expense of Plaintiff and Class members because Defendant's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

71. The benefits that Defendant derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable for Defendant to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Action.

72. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

**REQUEST FOR RELIEF**

73. Plaintiff Phillips, on her own behalf and on behalf of the Class and the Sub-Class, requests the following relief:

a. An order certifying the Class and the Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Phillips as Class and Sub-Class Representative and their attorneys as Class Counsel;

b. A declaration that Defendant are financially responsible for notifying Class and Sub-Class members of the pendency of this suit;

c. An order declaring that Defendant's conduct violates the consumer protection statutes cited;

d. Actual damages;

e. Statutory damages;

f. An order providing appropriate equitable relief in the form of an injunction against Defendant's unlawful and deceptive acts and practices, and requiring proper, complete, and accurate representation of the Products;

g. Pre- and post- judgment interest on all amounts awarded;

h. Other injunctive relief as the Court may deem appropriate; and

i. An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

74. Plaintiff hereby demands a trial by jury.

DATED: November 12, 2026

**YAGMAN PLLC**

/s/ *Blake Hunter Yagman*
Blake Hunter Yagman
*blake.yagman@yagmanpllc.com*
THE CHRYSLER BUILDING
405 Lexington Avenue, 26th Floor
New York, New York 10174
Tel: (929) 709-1493

*Attorney for Plaintiff Toni Phillips*
*and the Proposed Classes*